Opinion of the court, by
Judge Lane :
*In 1795, Francis Kennedy contracted to purchase lot No. 406, in Cincinnati, into the possession of which he entered and. died. After his death, Symmes leased the lot to the widow for life, and conveyed the reversion to the children. Mrs. Drake is one-of those children, born in 1791, married in 1811, and attained majority in 1812. In 1807, the widow and children united in a conveyance of the lot to the defendants and those whose estate they held, but Mrs. Drake, if she then executed the deed, did not acknowledge it until 1809, when, having attained the age of eighteen, she acknowledged the instrument, probably under the' mistaken belief that she possessed the requisite power to convey. The lot was sold at its full value, and the whole was the subject of a family arrangement between the mother, the heirs, and the-guardians of such as were minors. By this arrangement, the evidence showed the mother was to have the use or interest of one-third the money during her life; that this sum was comprised in a *231 note given to her by Anderson, one of the purchasers, the interest of which was paid to her until her death, in 1816.
After Mrs. Kennedy’s death, the heirs, including Drake and his-wife, met and divided her property, and appointed one of their number a trustee to collect the note from Anderson ; in 1818 and 1827, the trustee paid to Mr. Drake his share of the note, and took receipts which are severally stated to be in part and in full of Mrs. Drake’s share of Mrs. Kennedy’s estate.
It was shown, in proof, that Mr. and Mrs. Drake, at all times-since their marriage, have resided within eight or ten miles of Cincinnati. They have not been heard to complain of any unfairness in the sale, or even to speak of the transaction; except, that in 1827, Mr. D. being applied to for a release, declined, saying, “ he would look into the business.”
Upon this state of "facts, the jury were instructed by the court-to return a verdict for the’defendants ; to set aside which and obtain a new trial is the object of this motion.
It is conceded by counsel in this case, that the deed of Mrs; Drake, having been executed during her minority, is voidable, and that when she attained full age, she possessed *the power of resuming the estate. The questions which the parties intend to present, depend upon the effect and operation of deeds by infants, and the mode in which the law permits them to be rendered void.
What is necessary to avoid an infant’s deed? Chancellor Kent, 2 Com. 195, notices it as “remarkable” that so much uncortaintj/ rests upon this question at this day. That so late as 1818, thij present Lord Lyndhurst, and the present chief justice of thi¿ common pleas, while sergeants, conducting the case in 8 Taunt, 36, should treat the matter as so unsettled; one affirming tha/i every such contract binds the adult until avoided; the other insisting that no such contract possesses any validity, until after confirmation. The chief justice who tried the case, treats the contract as valid, until some act of disaffirmance is shown, but other cases seem to be decided on the supposition that until affirmance, the contract is void. Co. Lit. 51; 1 Greenl. 11; 11 Johns. 539; 14 Id. 124; 11 Serg. & Rawle, 305, cited by Kent, ut supra. But to us it appears, that the word voidable, ex vi termini, shows that such a deed transmits the title; and that after vesting it, it continues in the grantee until divested by some act of the maker of *232 tbe deed. Some oí the books apparently suppose that the act of avoidance must be of equal solemnity with the act of grant. 4 Day, 51; 14 Johns. 124. But I can not find it to be expressly decided, except'in case of feoffments, where a peculiar feudal principle renders it necessary; we believe that an entry, suit, or action, a subsequent conveyance, an effort to restore parties to their original condition, or any act unequivocally manifesting the intention, would render the avoidance effectual, and that the institution of, ^this suit is an act fully possessing this character.
But it is strenuously urged that the power of disaffirmance must be executed “ in a reasonable time,” in some short period after the infant becomes of age. The- eases cited, do not appear to us to establish this proposition, nor do we believe it supported by any sound reasons. The power to rescind contracts at law and chancery from the omission of one of the parties, strikes us as not analogous to this; there the contract is already void, if the party elect to consider *it; here it is not void, until made so by the act of the party. The right to abandon in cases of insurance is regulated by mercantile securities, and governed by rules peculiar to itself. The ease of Cecil v. Salsbury, 2 Vern. 224, related to a power to retract an offer, which must have been exorcised during 'the pendency of a suit, and was accompanied with acts recognizing the offer after the infant attained age. The-case in 2 Term, differs from the present in this, that it is the example of a privilege, not created by law, but originating in contract, to be •exercised on, not after, he attained full age. And in the case, 6 Com. 498, so strongly relied upon by the defendants, we find, if we may trust to a digest (for the original is not now accessible to us), that thirty-five years had elapsed from the making of the •deed to the attempted avoidance; a period longer than the statute of limitations, and of itself sufficient evidence of confirmation, without adverting to other circumstances connected with the possession of the note for‘the purchase money. In our opinion, lapse of time may frequently furnish evidence of acquiescence, and thus confirm the title, but of itself, does not take away the right to avoid, until the statute of limitations take effect. In this position we are countenanced by decisions of the most respectable courts. In 11 Johns. 539, twelve years; in 14 Johns. 124, eleven years had •elapsed from the time of the sale; in 4 Day, 57, fifteen years had *233 •expired; and in a case reported in 3 Marsh. —, the term of twenty-eight years intervened before the deed was avoided.
We are, therefore, led to the conclusion that since the statute of limitations does not yet operate, the plaintiffs possess the right to disaffirm the deed of Mrs. Drake, unless they have extinguished this privilege by something amountiug to a confirmation. I am prepared to admit this effect may follow, either an express recognition of the validity of the deed, or from any act done undér a knowledge of their rights, which demonstrates a willingness to be bound by the contract; or by continuing, after acquiring such knowledge,' to enjoy any benefit, profit, or privilege, under the contract, after the infant has attained full age.
*But I look in vain, through this transaction, for evidence of any such assent. There is no satifactory proof that Mrs. Drake was apprised of her rights that she know she possessed the power to disaffirm; but the testimony raises the suspicion that she believed she was bound to convey, because it was said the land was sold by order of court. Besides,'she has at all times been under such disabilities that no binding ratification could be made except by deed. It does not appear that Drake knew his wife was ever a proprietor in the lot; the receipt of his share of the purchase money happened long after the sale, when the debt was embodied in the note from Anderson to Mrs. Kennedy, to which his wife was entitled as heir ; and neither his receipts, nor any other act in proof, lead to the belief that he knew from whence it arose, •or that he claimed it in any other character.
Kew trial granted.