WILLIAM H. BRAWNER, AND MARY C. BRAWNER, HIS WIFE, vs. ELKANAH F. FRANKLIN, JOSEPH H. FRANKLIN AND SARAH FRANKLIN.—*December* 1846.

*F* purchased of *M* and *S*, their interest in a tract of land; and took from *S*, then an infant, a bond of conveyance, with security, for the land, conditioned to convey, at a time after she came of age. All the purchase money was paid, and *F*, who had gone into, remained in possession; when *S* came of age, she refused to ratify the sale, execute a deed, or repay the purchase money, but brought ejectment in the name of herself and husband, to recover possession of her undivided interest. HELD : that she was not liable to be restrained by injunction.

The answer of one of the co-defendants, the security in the bond of conveyance, disclosed the fact, that the purchase money for the land had been paid to the husband of *S*, by the complainant, after his marriage. HELD : if such were the case, he could be restrained, from recovering the land sold, at law, during his life time; and that the cause ought to be remanded, to give the complainant an opportunity of amending his bill, and claiming an injunction against the husband and wife, during the life of the husband.

It is a general principle, as well at law as in equity, that no person under the age of twenty-one years, is competent to make a binding contract, unless it be for necessaries.

No executory contract by him *bona fide* entered into, during minority, unless confirmed after arriving at years of maturity, can be decreed to be specifically performed by a court of equity; or enforced in a court of law.

Nor in the absence of such confirmation, when pursuing his legal rights in contravention of such contract, can the infant be restrained from so doing, by a court of equity interposing a prohibition by way of injunction.

Such an interference, to restrain the violation of a contract, is only warranted where the contract is susceptible of enforcement in a court of law, or in a court of equity.

An adult cannot enforce an executory contract with an infant, upon which the former has advanced the consideration, nor recover it in an action of assumpsit, where the specific and identical consideration has been parted with, by the infant.

If the infant have already advanced money upon a contract, which is executory upon the part of the adult, he cannot disaffirm it, and sue the other party for the advance, whenever it was paid on a valuable consideration, which has been partially enjoyed, and especially, if he had received the benefit of his contract.

Where a bill for an injunction states no proper case, and it is not aided by the answers, under the act of 1835, chap. 380, the court may either dissolve the injunction and remand the cause, or dismiss the bill; but if it appears to the court, that although the injunction was properly dissolved, yet the complainant may have relief by amendment, it will, after dissolving the injunction, remand the cause for amendment and further proceedings.

APPEAL from the Equity side of *Charles* county court.

On the 31st October 1844, the appellees filed their bill, alleging, that *Elkanah Franklin*, the father of *E. F.* and *J. H.*, and the husband of *Sarah*, died in the year 1840, leaving the appellees, his widow and children, alive, and also *Mary E. Franklin*, his daughter. The said *E. F.*, by his last will, devised all his real estate, called by the name of "*Three Sisters*," to his three sons, to wit, *E. F.*, *J. H.* and *F. E. F.* Before the death of the said *E. F.*, the said *F. E. F.* died, and his legal representatives are two of the complainants in this bill, to wit, *E. F.*, and *J. H.*, and his sister, *M. E. F.*; that the said *E. F.*, during his life time, that is to say, in the year 1839, purchased a part of the tract of land called the "*Three Sisters*," from *M. F. Speake* and *Mary C. Speake*, who held the said parcel of land as tenants in common. That the said *Margaret F. Speake*, executed to the said *E. F.*, an absolute deed for all her undivided interest in the said premises; *but that the said M. C. S., being under the age of* twenty-one years, executed her bond jointly with, &c., *Bennett Dyson* as her surety, conditioned, that the said *M. C. S.* should, on or before the 20th January 1842, execute a deed conveying title to the undivided interest of the said *M. C. S.*, in a part of a tract of land called the "*Three Sisters*," lying, &c. At which said time mentioned in said bond, the said *M. C. S.* would have passed the period of her minority. That the whole of the purchase money for the said undivided interest of the said *M. C. S.*, in the said land, had been paid, on the 19th day of September, in the year 1839, that before the time when said deed was to have been given, to wit, the 20th of January 1842, the said *M. C. S.* intermarried with a certain *William H. Brawner*, and that the said *W. H. B.*, and the said *Mary C.*, now altogether refuse either to give and execute a good and valid deed to the heirs of the said *E. F.*, in conformity to the conditions of the said bond of the said *M. C. S.*, or to pay back to the said heirs the said purchase money, which has been heretofore paid for the undivided interest of the said *Mary C.*, in the said parcel of ground; that the said *W. H. B.* and *Mary C.*, his wife, have instituted an

action of ejectment in *Charles* county court, against your complainants, for the recovery of the undivided interest of the said *Mary C.*, in the said part of a tract of land called the "*Three Sisters*," and for the conveyance of which her bond was given. Prayer for decree, that a deed should be given to the heirs of the said *E. F.*, in conformity to the bond of the said *M. C. S.*, or that the obligors in the said bond, shall pay back to the heirs of the said *E. F.*, the money heretofore paid for the purchase of said land, with interest; for such other and further relief as their case may require; for writ of injunction, to the said *W. H. B.* and *M. C.*, his wife, to stay all proceedings, whatsoever, in the aforesaid action of ejectment, &c.; subpœna, &c., against *William H. Brawner, Mary C.*, his wife, and *Bennett Dyson*.

With this bill were filed the various instruments referred to in it.

"The condition of the obligation of *Mary C. Speake* and *Bennett Dyson*, was such, that if the above bound *Mary C. Speake*, shall and do, on or before the 20th January 1842, make, execute and acknowledge, such act, deed, or conveyance, which shall be needful for conveying, assuring, transferring, establishing and confirming, unto the said *Elkanah Franklin*, his heirs and assigns, a good, pure, absolute estate, in fee simple, clear of all incumbrances, of, in and to her undivided interest in and to a part of a tract or parcel of land, situate, &c., and called '*The Three Sisters*,' originally a part of *Christian Temple, Manor, Hard Frost*, and *Taylor's Thicket*, containing, &c., together with the improvements and appurtenances thereunto belonging, then this obligation to be void, and of none effect, else in full force and virtue in law."

At the foot of the bond was written :

"Received, 19th day of November 1839, of *Elkanah Franklin*, by the hand of *Francis E. Dunnington*, the amount of the above bond, say, two hundred and fifty dollars, for the use of *Mary C. Speake*.          Bennett Dyson."

At August court 1844, the writ of injunction was ordered as prayed.

The answer of *William H. Brawner* and *Mary C.*, *his wife*, alleged: that the said *Mary C.* while an infant, and so young as to be entirely incapable to understand in a proper manner, any matters of business appertaining to sale of real estate, and entirely unacquainted with the value of land, and being also without a guardian, was induced, during her minority as aforesaid, by representations made to her by a certain *Francis E. Dunnington* and others, to agree, that the said *F. E. D.* should make sale of her interest in said land; that said *F. E. D.* did sell at private sale said land to a certain *George Dunnington*, his son; and said *G. D.* afterwards resold the said land to the said *Elkanah Franklin*, mentioned in said bill. That said *G. D.* at the time of the sale of the said land by him to the said *E. F.*, reserved to himself the privilege and right of cutting, and carrying away and disposing of, as he thought proper, all the wood upon said land; selling to said *F.* the soil alone, and reserving to his own use, the whole of the wood and timber then upon the land. That the said *Mary C.* received, or the said *Bennet Dyson*, for her use, from the said *F. E. D.*, the sum of two hundred and fifty dollars, for her interest in said land. That said *Mary C.*, while an infant, as aforesaid, signed the bond made a part of complainant's bill; although so young at the time, and unacquainted with such transactions, as to be entirely ignorant of the character of the instrument she was signing. That these defendants have understood and believe, that said bond remained in the possession of said *Francis E.* or *George Dunnington*, up to the time of the institution of the ejectment suit mentioned in said bill; and although said bond was given and executed to *E. F.* by name, the said *Mary C.* had no transaction about said sale or land with the said *E. F.*, the whole matter, as far as she was concerned, being transacted with the said *F. E.*; that the said tract of land, while in the possession of the said *Mary C.*, tenant as aforesaid, and before the sale thereof was made, as aforesaid, was heavily wooded; and that the chief value of said land consisted in the large quantity of wood and timber upon it; that said land lies very near, or borders on the *Potomac River*, and is very convenient to ship wood to the market of

the *District of Columbia;* that the said land thus covered with wood, was chiefly valuable on account of the wood thereon; that the interest of said *Mary C.* in said land, was worth a great deal more than the sum received by her, while the land was covered with wood. That the said *G. D.* in accordance with the right he reserved to himself, at the time of the sale by him to said *Franklin,* has cut and carried away the greater part of the wood from said land; and these defendants have been informed and believe, that he is still engaged in cutting and carrying away the residue of the said wood still remaining upon the said land; that the value of the wood thus cut and carried away by said *G. D.* is much more than the whole amount received by said *Mary C.,* and her sister, *Margaret F.,* for their interest in said land. *That said E. F. knew, at the time* he purchased said land from said *D.,* that said *Mary C.* was an infant, and incapable to execute a valid deed; and that said *Dunnington* had purchased said land, or her interest therein, from said *Mary C.,* while an infant, as aforesaid; that these defendants would be willing to refund the $250, received by the said *Mary C.* if the said land could be restored to them in the same state that it was at the time said *Mary C.* was induced to consent to the sale aforesaid; but they are not willing to pay back the $250, and take the land as it now stands, since all that made the land valuable, the wood and timber, *has* been taken off said land. These defendants therefore consider that advantage was taken of the infancy and inexperience of said *Mary C.,* in inducing her to consent to the sale of said land for much less than its real value, and much less than said land would have brought, if put up at public sale, at a time when she was ignorant of the value of said land; and that a large profit was made upon the resale of said land; all which is against equity, and which operated as a fraud upon said *Mary C.;* that said *Mary C.* at the time of the sale, as aforesaid, was an infant, and under the age of twenty-one years, that is to say, of the age of seventeen years, or thereabouts; all which premises these respondents plead, and rely on, as a sufficient bar and answer to the said complainants bill; and they pray that the injunction be dissolved, &c.

The answer of *Bennett Dyson* alleged, that the said *Mary C.*, while an infant as aforesaid, was induced, principally by the representations of a certain *Francis E. Dunnington,* to consent that said *F. E. D.* should sell said land; that said *F. E.* did sell said land to his son, *G. D.*, and that said *G. D.* afterwards resold the same to said *E. F.;* that said *F. E.* paid to this respondent the sum of five hundred dollars, for the use of said *Margaret F.* and *Mary C.;* and this respondent has since paid the said sum of money *to the respective husbands* of the said *Mary C.* and *Margaret F.*, who have since married, to wit, the sum of two hundred and fifty dollars, to the said *William H. Brawner*, and the sum of two hundred and fifty dollars to *Robert W. Hanson*, the husband of *Margaret F.;* that this respondent did sign the said bond, made a part of complainant's bill, supposing that the said *Mary C.* would ratify said sale when she should arrive at the age of twenty-one years; that the whole of this transaction was with said *Francis E.*, although the said *Elkanah Franklin's* name is the obligee in said bond. That this respondent knew nothing of the value of said land at the time of the sale as aforesaid; but supposed from the representations of said *Francis E.* and others, that it would be advantageous to the said *Mary C.* and *Margaret F.* that said land should be sold, and he was thereby induced to sign said bond as security, as aforesaid, and as, &c.

Upon the bill and answers, the defendants, *Brawner and wife*, moved the county court to dissolve the injunction, and dismiss the complainant's bill, which that court refused to do; and they appealed to this court.

The cause was argued before DORSEY, SPENCE and MARTIN, J.

By J. JOHNSON and C. MCLEAN, for the appellants, and By CAUSIN and RANDALL, for the appellees.

DORSEY, J., delivered the opinion of this court.

It is a general and well settled principle, as well at law as in equity, that no person under the age of twenty-one years, is com-

petent to make a contract, binding upon him, unless it be for "necessaries." Until his arrival at that age, the law presumes his incompetency to protect his interests, and manage his own concerns; and therefore casts around him its protection and guardianship, as to all his contracts. No executory contract, by him, *bona fide*, entered into, during his minority—unless confirmed by him after arriving at years of maturity—can be decreed to be specifically performed, by a court of equity; or enforced, in a court of law. Nor, in the absence of such confirmation, when pursuing his legal rights, in contravention of such contract, can he be restrained from so doing, by a court of equity interposing a prohibition, by way of injunction. Such an interference, to restrain the violation of a contract, is only warranted, where the contract is susceptible of enforcement in a court of law; or in a court of equity. In the case before us, neither the contract, as disclosed by the bill, or as shewn by the bill and the answer of *Brawner and wife*, when opposed, as it is, by the defence of infancy, can be of any avail to the complainants, either at law or in equity. It would thence seem to follow, that the injunction, which has issued, ought to be dissolved; and that the bill should be dismissed: no equity appearing, to entitle the complainants to the relief they have sought. But it is insisted, that although the right to a specific performance cannot be established, nor a continuance of the injunction be granted, as ancillary thereto, yet, that the injunction to stay proceedings at law, ought to be continued, until the purchase money paid for the land has been repaid by *Brawner and wife*. In support of such a position, no sufficient authority has been referred to: and it is believed that none can be found. It would be at war with the whole theory of the law, as respects the invalidity of contracts by infants. The law imputes to an infant, an incapacity to assume responsibilities, or incur debts, unless it be for necessaries; and denies to him a legal capacity to borrow money, because he is incompetent to make of it, an advantageous or judicious application. But establish the doctrine now contended for, and what is the necessary result? Why, that the whole policy of the law, as to infantile incompetency to sell, waste, and dispose of their property and estates, is frustrated and anni-

hilated: the alleged guardianship and protection thrown around them by the law, is a mere mockery, existing but in name. An infant may sell his patrimonial estate; prodigally waste the purchase money, in extravagance, gambling, and dissipation; and if, when arrived at years of maturity and discretion, he disaffirm the contract, and sues at law for the recovery of his property, a court of equity will, by injunction, arrest the arm of the law, and say to him, before you shall further assert your claim to your estate, you must repay to the purchaser all the money you have received from him. And, upon the same principle, an infant who borrows money, and mortgages his estate to secure its repayment, and after arriving at full age, and disaffirming his act, seeks at law the reclamation of his property, in chancery he will be enjoined from all other further proceedings at law, in the assertion of his rights. And if there be reason, consistency or justice in the proceedings of a court of equity, whenever he, who when in infancy has contracted a debt, and being sued for it at law, sets up infancy as a defence to the action, a court of equity should interpose by way of injunction, and prohibit his thus defending himself, until he has restored to his creditor, that which he received as the consideration of his indebtedness. Under such a system of equity jurisprudence as this, the only difference between an adult, and an infant mortgagor, seeking a redemption of their property, is this, the former goes into chancery, voluntarily, as a complainant; the latter is dragged in, compulsorily, as a defendant. When there, the protection and relief extended to each, is substantially the same. To such a repudiation of all material discrimination, between the contracts of infants and adults, this court is not prepared to subscribe.

In reviewing the decisions upon the subject, *Justice Story* appears to have arrived at correct results. In page 26, section 42, of *Story on Contracts*, he states, that "the true rule seems to be, that when articles are furnished to the infant, which do not come within the definition of 'necessaries,' and which are consumed or parted with; or when money is lent, which is expended by the infant; that the other party has no remedy to recover an equivalent for the goods, or the money:

the specific consideration given by him, being parted with, or not being capable of return. But wherever that specific consideration, whatever it be, exists, and remains in the hands of the infant at the time of his disaffirmance of the contract, and is capable of return, the infant is bound to give it up; and he is treated as a trustee of the other party, if the contract be made originally in good faith. The ground of such a distinction is, that in the first case, the goods or money cannot be returned; and to make the infant liable therefor, in damages, merely because they had been used by him, would be to deprive him of his privilege of affirming, or avoiding, his contract." And in page 27, section 43, of the same book, it is stated, that "every person deals with an infant at arms length, at his own risk, and with a party for whom the law has a jealous watchfulness." But although an adult cannot enforce an executory contract, upon which he has advanced the consideration, nor recover it in an action of assumpsit, where the specific and identical consideration has been parted with by the infant; yet this rule operates in some measure reciprocally; for if the infant have already advanced money upon a contract, which is executory on the part of the adult, he cannot disaffirm it, and sue the other party for the advance, whenever it was paid on a valuable consideration, which has been partially enjoyed; and especially, if he had received the benefits of his contract.

The complainants, by the statements in their bill, having failed to shew themselves entitled to an injunction, or any equitable relief whatever; and the defectiveness of their bill being wholly unaided by the admissions in the answer of *Brawner and wife*, the court below might have granted the motion of the appellants to dissolve the injunction, and dismiss the bill filed by the appellees, without giving to them any serious cause of complaint.

That the answer of the co-defendant, *Dyson*, is no evidence against *Brawner and wife*, is so conclusively settled by repeated adjudications of this court, that it is unnecessary to refer to them in the decision of such a question. This court, therefore, might content itself with a simple reversal of the decision of the court below, and passing a decree dissolving the injunction, and

dismissing the bill of complaint. But seeing from the answer, that if the case be remanded to the county court, the complainants may, by an amended bill, possibly, nay, probably, shew themselves entitled to an injunction against *Brawner and wife,* to stay their proceedings at law, during the life of *William H. Brawner,* this court will sign a decree reversing the decision of the county court, and dissolving the injunction; and remanding the case to the county court as a court of equity, that such further proceedings may be had therein, by way of amendment, or otherwise, as may be necessary to prepare the case for a final decree upon its merits.

JUDGMENT REVERSED AND CAUSE REMANDED.