GILLESPIE *et ux. v.* BAILEY *et al.*

Decided November, 1877.

1877.
Special Term.

1. A deed or contract for the sale of land, executed by a married woman having no separate estate, which has]not been acknowledged by her after a privy examination, is absolutely void as to her.

2. A deed or contract for the sale of land, executed by an infant, is not absolutely void, but may be either affirmed or avoided at his pleasure, after he attains his majority.

3. Where the purchaser of lands of an infant has not put valuable improvements upon the land, and has not been in actual possession of the land, after the infant has attained his majority for a period sufficiently long to bar a recovery of lands by reason of the statute of limitations, mere lapse of time will not amount to an affirmance of the sale by the infant, or bar him of his right to avoid it.

4. Though under certain circumstances a person, who had bought land of an infant, might be entitled to have the purchase money paid by him to the infant refunded, when the contract is avoided by the infant, after he attains his majority ; yet as he would have to account to the infant for the rents and profits of the land while in his possession, if the record discloses that such rents and profits must greatly exceed the purchase money paid and interest, and the vendor does not ask for the settlement of such account, though ordered, the purchaser cannot in the Appellate Court assign as error, that the court below did not take an account charging him with the rents and profits, and crediting him by such purchase money (an order too which had remained unexecuted twenty-two years), before it rendered a final decree vacating the sale and putting the vendor in possession, as the vendee is not prejudiced by such failure to settle such account.

5. If the plaintiff, after the institution of a suit to partition land, sells the land, the case properly proceeds in his name, as though no such sale had taken place.

6. An infant, who has sold his interest in land to a tenant in common with him, may bring a suit, after he has attained his majority, to set aside his contract of sale, and at the same time to partition the land in the same suit.

7. A failure for thirteen years to make any entry but continuances in a cause, where such entry of continuances has regularly been made at each term, is no discontinuance of a cause, if the court has made no order dismissing the cause for want of prosecution, as provided for by the statute.

8. If a court is satisfied that the plaintiff's death has been suggested by the defendant, without any knowledge on his part that he is really dead, but only for the purpose of delay, the court may render a final decree in the cause then ready for such action, and disregard such suggestion.

Appeal granted upon the petition of Charles P. Bailey to a final decree of the circuit court of the county of Wood, rendered on the 5th day of October 1869, in a cause in chancery in said court then pending, in which John Gillespie and wife were plaintiffs, and said Charles P. Bailey and others were defendants.

Hon. George Loomis, formerly judge of the circuit court of Wood county, pronounced the decree complained of.

GREEN, PRESIDENT, furnishes the following statement of the case :

John James in 1797 purchased of Joseph Spencer a tract of land of about seven hundred acres on Stillwell's creek, in Wood county. About the year 1800 John James died intestate leaving nine children, two of whom died intestate shortly afterwards; in June 1803 Esther, one of the daughters of John James, married John Gillespie ; and on July 8, 1803, she and her husband, John Gillespie, sold to her brother, John James, then a resident of Wood county, all their interest in the real and personal estate of her father, John James, deceased, which was

evidenced by an agreement or deed under the hands and seals of John Gillespie and his wife. This deed or paper was witnessed by three witnesses, but was never acknowledged for recordation by either John Gillespie or his wife. There was no privy examination of her. When this agreement or deed was executed, John Gillespie was not quite eighteen years of age. On the 31st of July 1832, John James assigned, by a paper under his hand and seal, three-sevenths of said tract of land to Charles P. Bailey: one of which sevenths he owned as heir of John James, deceased: one of which he purchased from Seth Bailey and wife: and the third from Gillespie and wife, by the agreement of 1803. And about the same time Charles P. Bailey made this purchase of John James, he claims to have purchased the interest of all the other heirs of John James, deceased, in said tract of land. In 1820 Joseph Spencer instituted a suit against the heirs of John James to subject said land to the payment of about $1,000.00, which he claimed as a balance due him from John James, deceased, on account of the purchase of said land. This controversy lasted some twenty-six years, and was finally decided by a decree of the circuit court of Wood county, pronounced March 25, 1846, whereby the bill was dismissed. About 1833 John James brought a suit against Charles P. Bailey to vacate his agreement to sell his interest in said tract of land or to compel the payment thereof by Bailey according to his contract. This Bailey controverted partly because of the defect of title in that portion, which had been bought of John Gillespie and Esther his wife; this controversy also pended many years, being finally decided by a decision of the Court of Appeals of Virginia August 22, 1854, reported in 11 Gratt. 468. The decree required the payment by Bailey of the consideration he agreed to pay; and that he was entitled to no abatement thereof; but must take such title as John James had, who sold to him, the sale being not of the land, but of John James's interest in it

1877.
Special Term.

Gillespie *et ux.*
v.
Bailey *et al.*

without warranty.  Some other matters were decided not necessary to notice.  David Rowell a creditor of Simeon, one of the children of John James, deceased, about 1853 also brought a foreign attachment against him, claiming rents of this tract of land to be in the hands of Charles P. Bailey, belonging to Simeon James.  This suit pended till March 23, 1847, when by agreement of parties it was dismissed.  This tract of land was in the possession of John James, deceased; but after his death his children left this State and were scattered through the west; and the posession of this tract of land by any of the heirs of John James was abandoned about the year 1819, and it lay entirely idle, unenclosed and unoccupied for about thirteen years, when Charles P. Bailey made his said purchase and then took possession of said land about 1832, and has since occupied and cultivated the same or portions of it. It does not appear that Gillespie and wife or their vendee John James, ever occupied this land, they both left this State many years ago ; whether John James has resided in this State since his purchase of Gillespie and wife in 1803 does not appear.  At June rules 1833 John Gillespie and wife instituted this suit against Charles P. Bailey in the circuit superior court of law and chancery for Wood county, asking to vacate this deed, or more properly speaking contract, of July 8, 1803, made by them with John James on the ground, that when it was executed, John Gillespie was an infant and Esther Gillespie a married woman, and asking that their one-seventh of said tract of land might be assigned them ; and for general relief.  On April 2, 1834, Charles P. Bailey filed his answer, in which he produces the agreement dated July 8, 1803 ; claims that he has purchased out all the other interests of the heirs of John James, deceased, in said land, and files deeds or agreements from them with him as evincing their sales ; claims that the lapse of thirty years, since the execution of said agreement of 1803, bars the complainants from asking that it may be set aside ; and insists that, if set aside, the $80.00 and interest, paid them for their interest

in the land, ought to be refunded to him. He also asserts, that a few days before the institution of this suit Gillespie and wife had sold and conveyed their interest in said land to John J. Jackson, and had no right to institute the suit; that Jackson was their counsel in this suit and was prosecuting it at his own cost and for his own benefit, and that this constituted champerty and maintenance, and for this reason the suit ought to be dismissed; and further insists that they had no right to ask a partition of this land, till they had by a distinct suit established their right to the undivided seventh of it claimed by them. On the filing of this answer the cause was remanded to rules, regular continuances of it were entered on the rule book till June rules 1834, when a general replication was filed to Bailey's answer; it was then continued regularly at rules to January 1835, when security for costs were required by the defendants, and was given at February rules 1835, and was then further regularly continued at rules till July rules 1836, when it was set for hearing as to Bailey; at August rules 1836 it was set for hearing as to all the other defendants; it was then continued from term to term till February 17, 1847, when the following decree was rendered:

"This day came the parties by their attorneys; and this cause coming on now to be heard on the bill, answer of defendant Bailey, replication, order of publication, depositions and exhibits, and this cause being considered in connection with the suit decided in this court at the March term 1846, *Spencer's administrator and heirs* v. *James's heirs*, and also the suit now pending in this Court of John James against the defendant, Charles P. Bailey, and Daniel Rowell against Simeon James and Charles P. Bailey, and was argued by counsel; on consideration whereof the court is of opinion that at the time of executing the release by Gillespie and wife to John James, July 8, 1803, referred to as exhibit "A" in defendant Bailey's answer, the complainant Gillespie was under the age of twenty-one years, and that

the complainant, Esther Gillespie, was then and ever since has been a *feme covert*. The court is further of opinion that since the making of the said release of 8th July 1803, the land sought to be partitioned was so involved as to the title, which continued until the decision of the suit of *Spencer's administrator and heirs* v. *James's heirs* above referred to, and which was decided at the March term 1846 of this court, coupled with the fact of the absence of the complainant from the commonwealth, both which facts fully appear from the orders of publications and other proceedings in the cases of Spencer's administrators and heirs, and as also the statement and admissions in the answer of Bailey, in the suit of Rowell against him and Simeon James, as to be sufficient to repel the presumption of confirmation of said release on the part of the complainant, John, since he attained full age; and that therefore, notwithstanding said release, they are entitled to partition, and to hold in severalty one-seventh of said tract of land in the bill mentioned; but the court is further of opinion that on vacating said release the complainant should be decreed to refund so much of the said sum of $80.00, the consideration of said release, as was paid on account of the release of the interest of the complainants in the tract of lands, sought to be partitioned in this suit, deducting therefrom the rents and profits of the land; on consideration of all which it is adjudged, ordered and decreed, that Daniel C. Lovett, Daniel Kincheloe and Mathias Chapman, or any two of them, after being first duly sworn for that purpose, do go on the said tract of land and lay off and assign to the complainant, Esther, the one-seventh of said tract of land, according to quality, value and quantity, and return a fair plat thereof to this court; and this cause is referred to one of the master commissioners of this court to ascertain : 1st. What proportion of the $80.00, the consideration mentioned in the release of July 8, 1803, from Gillespie and wife to John James, was paid on account of the land in

the bill mentioned, and what other property was embraced by said release, and how much of said sum of $80.00 was or should have been paid on account of such other property; and in the absence of any evidence in relation thereto that the same be apportioned according to the value of the property, sold or intended to be sold by said release; and also that said commissioner state an account charging the said John James and his vendee, Bailey, with the rents and profits of the land in the bill mentioned, and crediting them with the money paid on account thereof, and the interest, and make report of his proceedings herein together with any special matter, deemed pertinent or required by either party, with a view to a final decree; all of which is adjudged, ordered and decreed accordingly."

The depositions and papers in the chancery suits, referred to in said decree, prove the facts set forth above, and also prove that Gillespie and wife, about the time this suit was instituted, made a deed to Jackson of all their interest in said tract of land, and acknowleged the same for recordation; but they do not show whether this deed was made before or since the institution of this suit. After this decree was entered, the cause was continued from term to term by orders on the record books till November 20, 1860, when an order was made substituting another commissioner in place of Lovett, who had died. It was then continued regularly from term to term till October 19, 1863, when another order was made substituting another commissioner in place of Loomis, who had been made judge of the court. The cause was then continued from term to term till October 5, 1869, when a final decree was entered in this cause which is in these words:

"The defendants suggest the death of the complainants, as set out in the affidavit of C. P. Bailey; whereupon the court is of opinion that the said proof is not sufficient to prove the death of the complainant, and that the same comes too late, and is made for the purpose of delay, it

being made at the time the papers are offered to the court for final decree; and thereupon J. S. A. Farrow and R. P. Steed, who were appointed by a former order of this court, made in this cause, special commissioners to survey and lay off to Esther Gillespie, the wife of John Gillespie, the one-seventh part of the land in the bill mentioned, having due regard to quantity and quality, filed here in court their report, and the same is hereby confirmed; and this cause coming on now to be finally heard on the papers read at the former hearing, the former orders made therein, and the said report of said special commissioners so made as aforesaid, and upon the affidavits and counter affidavits filed by the parties, and was argued by counsel; on consideration whereof it is adjudged, ordered and decreed, that the said Esther Gillespie do hold and be possessed, as and for her share of the said land in the bill mentioned, the lot set off to her by said commissioners, and which is bounded as follows to-wit: Beginning at a cherry stump on the bank of the river, the original lower corner to the Bailey tract, thence N. $6\frac{1}{2}°$ E. 59 poles to a stake, a corner to the lands of Irvin Vaughn, in a line of J. M. Jackson; thence with Vaughn's line S. $73\frac{1}{4}$ E. 62 poles to his corner, a stone on the north side of the railroad; thence with another of Vaughn's lines N. $26\frac{1}{4}$ E. 140 poles crossing Stillwell's creek to a stone, Vaughn's corner, on the Staunton pike; thence with the pike north 89 E. 13.5 poles (twelve poles at right angles to Vaughn's line) to a stone on the south side of the pike; thence S. $26\frac{1}{4}$ W. 144 poles, crossing the creek twice, to a stone on the north side of railroad, opposite the center of abutment on the east side of the creek; thence with the railroad to the center of the creek; thence down the same to its mouth; thence down the Kanawha river 110 poles to the beginning, containing thirty-three acres more or less. And it is further adjudged, ordered and decreed, that said assignment of said piece or parcel of land to said Esther Gillespie be held firm and stable, and that the same shall

be in full of her distributive share in said land, and that the residue of said tract be held by the owners thereof free and unincumbered by any claim thereto by said Esther Gillespie. And it is further adjudged, ordered and decreed, that the costs of this suit be divided equally between the parties thereto."

The affidavit of C. P. Bailey, referred to in this decree, states: " that some years ago, he was advised by his counsel to suggest the death of Gillespie and wife ; he shortly after this went to Jackson county, Ohio, and procured the affidavit of two persons, proving the death of both of them, and placed these affidavits in the hands of their attorney ; and that he, Bailey, was now informed these affidavits were not in the papers of the court; but he feels assuredly confident, that in a reasonable time he could procure all the evidence necessary to prove that they died many years since, even if the persons who made these affidavits are now dead." The report of the commissioners referred to states that they having been duly sworn went upon the land, and laid off one-seventh of the same to Esther Gillespie, wife of John Gillespie, according to quantity and quality, and gives the metes and bounds of this parcel. The affidavits, referred to in the decree, show that this was a fair and equitable allotment of one-seventh of the tract, quantity and quality considered, and was least injurious to the residue. From this decree an appeal and *supersedeas* has been allowed Charles P. Bailey.

*John A. Hutchinson*, for appellant, referred to the following authorities :

*Eagle Fire Co.* v. *Lent*, 6 Paige 635 ; *Tucker* v. *Moreland*, 10 Pet. 71 ; *Caperton* v. *Gregory*, 11 Gratt. 505, 511 ; Angel on Lim. 206–9 ; *Demorest* v. *Wynkoop*, 3 Johns. Ch. 129 ; *Doe* v. *Jasson*, 6 East. 80 ; *Riggs* v. *Deckmi*, 2 Scam. 438 ; 2 Dan. Ch. Pr. 1156–7, 1507 4 Am. ed.; Code Va. 1860, p. 729, §42 ; Code W. Va. p.

624, §44, p. 611, §7; *Exchange Bank* v. *Hall,* 6 W. Va. 447.

*Caleb Boggess, C. C. Cole & W. L. Cole,* for appellee.

1. Mere lapse of time, however long continued, will not amount to confirmation by an infant, after attaining his majority, of his deed made during infancy. There must be acquiescence in adverse possession, or something which amounts to an affirmative recognition of the deed or contract: 1 Parsons on Contracts, 223-4-5; *Jackson* v. *Carpenter,* 11 Johns. 539; *Jackson* v. *Burchin,* 14 Johns. 124.

2. The deed or executory contract of a married woman, unless acknowledged and recorded as required by the statute, is absolutely void, and not voidable only, and cannot be confirmed by her by any admission or act in *pais*: *Leftwich* v. *Neal,* 7 W. Va. 569, and the authorities there cited.

3. Where an infant's contract for the sale of real estate is declared void by a court of equity, it is not error for a court to neglect or refuse to decree the repayment by the infant of the purchase money received by him, where it appears that the vendee or his assignee is liable for rents and profits more than sufficient to offset the purchase money.

4. Where there is no exception to a commissioner's report, and the same is confirmed by the court below, the Appellate Court cannot consider any alleged error in the report, unless it appears upon the face thereof. And affidavits, filed in the courts below to show that such report is inequitable, cannot be considered by the Appellate Court: *Wills's adm'r* v. *Dunn's adm'r,* 5 Gratt. 384; *Reitz & Co.,* v. *Bennett,* 6 W. Va. 417; 2 Rob. Old Prac. 383, and authorities there cited.

A report of commissioners, who have been upon the ground and viewed the premises, cannot be overthrown except by evidence of a positive and unequivocal charac-

ter, showing clearly that the report is inequitable and un-just: *Supervisors of Doddridge Co.* v. *Stout,* 9 W. Va. 703; 2 Daniels Ch. Pr. (3d Am. ed.) pp. 1129-30; *Matter of division of real estate of Thompson,* 2 Green. Ch. 637.

5. The death of the plaintiff, after the institution of his suit, is matter of abatement, and must be pleaded; and a mere suggestion on the record is not sufficient when denied; and the court may proceed with the cause, notwithstanding such suggestion: 1 Chitty's Pleadings 435-6; 2 Lawyer's Guide 367; Bac. Abr. Title Abatement, "F."

6. If judgment or decree be rendered for plaintiff when he is in fact dead, it is error in fact, which may be corrected on motion after notice in court below, and cannot be assigned as error in Appellate Court, until such motion has been made in court below and overruled. Code W. Va. chapter 134 §§1 and 6.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first point which arises on this record is: should this appeal be dismissed because improvidently awarded? If the decree of February 17, 1847, was a final decree, then this appeal, being taken more than five years after its rendition, ought to be dismissed as improvidently awarded, otherwise it should not. The decisions in Virginia on the question, what decree is final and what interlocutory, are very numerous, and perhaps not altogether consistent; most of them are referred to in the case of *Manion* v. *Fahy,* reported in 11 W. Va. Perhaps the distinctions between decrees in this respect is as well stated by Judge Carr, in the case of *Thornton* v. *Fitzhugh,* 4 Leigh 209, as anywhere else. His language is: "The cases seem to me to take the true and clear distinction: where anything is reserved by the court for future adjudication to settle the matters in controversy, the decree is interlocutory; but when upon the

hearing all these matters are settled by the decree, such decree is final, though much may remain to be done before it can be completely carried into execution; and though, to effect this execution, the cause is retained and leave given to the parties to apply for the future aid of the court." Judge Baldwin too, in the case of *Cocke's adm'r* v. *Gilpin*, 1 Rob. 28, lays down a criterion to distinguish interlocutory and final decrees, which is perhaps as clear as any that can be laid down, it is this: "where the further action of the court *in* the cause is necessary to give complete relief contemplated by the court, then the decree, upon which the question arises, is to be regarded not as final, but interlocutory. I say the further action of the court *in* the cause, to distinguish it from that action of the court, which is common to both final and interlocutory decrees, to-wit, those measures, which are necessary for the execution of a decree, which has been pronounced, and which are properly to be regarded as adopted, not in but beyond the cause, and as founded on the decree itself, or mandate of the court, without respect to the relief, to which the party was previously entitled upon the merits of the case."

Applying these principles, the decree of 1847 is not final. The bill was filed by parties, who claimed to be tenants in common with the defendants, and asked among other things for a partition of the land and for general relief. If the case stated in the bill was established, the complainants had not only a right to a partition of the land, but also to an account of the rents and profits received by the defendant in possession. No decree therefore should be regarded as final, till these objects sought by the bill have been finally acted upon by the court, or abandoned by the parties. And the decree of 1847, while it determined that the allegations in the bill of the plaintiffs had been proven, and that they were entitled to this relief, did not give the relief, but directed certain officers of the court to do certain acts and report to the court, that it might give such relief.

Further action of the court *in* the cause was therefore necessary to give the relief contemplated by the court. This future action was not merely necessary for the execution of this decree, and is not founded on the decree without respect to the relief to which the party was previously entitled upon the merits of the case. But this further action is necessary to furnish the complainants the relief, to which they were entitled on the merits of the case itself, and therefore this decree cannot be properly said to have settled finally the matters in controversy between the parties. It settled the principles of the cause, but did not decide all matters between them; it did not decide how much was due from the plaintiff, or from the defendant, which was a subject of controversy. This decree is therefore interlocutory; and the appeal granted in this cause should not be dismissed as improvidently awarded.

The appeal from the last and final decree therefore necessarily opens for consideration all prior orders and decrees, upon which such final decree is based. *Camden* v. *Haymond,* 9 W. Va.; *Atkinson* v. *Munks,* 1 Cow. 702; *Teal* v. *Woodsworth,* 3 Paige 470.

There is another preliminary question raised in this case necessary to be disposed of before examining into the merits of the cause, that is: did the court err in rendering any decision in this cause on the 5th of October 1869, after the suggestion of the death of the complainants by the defendants. When this suggestion was made, the cause had been pending upwards of thirty-six years. As a reason for proceeding to render a decree in favor of the plaintiffs, after such suggestion of their death, the court below in its decree says: " that the court is of opinion that the proof is not sufficient to prove the death of complainants; and the same comes too late, and is made for the purposes of delay, it being made at the time the papers were offered to the court for final decree." The original practice, in case of the death of the plaintiff in a chancery cause, was for his representatives

to file a bill of review; now the cause may be re-

vived without such a bill, by statutory provisions. The plaintiffs' representatives are interested in seeing that no decree is entered in his favor after his death. And it is therefore usual for such representatives to have his death suggested, and the cause revived in their name. Still the court would permit the defendant to suggest the plaintiffs' death, if satisfied such suggestion is made truthfully and *bona fide.* But in this as in all other matters, the court will not permit such action, when its object is not to have proper parties before the court, but simply to produce delay. The court below seems, for reasons which were doubtless satisfactory, to have regarded the suggestion as made in bad faith, and merely for the purposes of delay. The affidavit, which was filed to support it, was that of the defendant Charles P. Bailey. He says: "Some years ago he was advised by his counsel to suggest to the court, the death of Gillespie and wife, he, the deponent, shortly after this went to Jackson county, Ohio, and procured the affidavit of two persons, proving the death of both Gillespie and wife, which testimony or affidavits he placed in the hands of their attorney; and he is now informed by counsel, that there are no such papers on file in this case. And he feels assuredly confident that he could procure all the evidence necessary to establish the fact, that Gillespie and wife departed this life many years since, even if those persons, who made the affidavit above spoken of, should have also departed this life." There are several things in connection with this affidavit which might well give rise to the belief, that its whole object was to produce delay. The evidence in the cause shows, that Gillespie and wife removed from Jackson county, Ohio, more than thirty-six years before this affidavit was made; and it also shows, where they went to reside. This evidence had been in the cause for thirty years; and it seems strange that the defendant, Bailey, should have gone to that county to find out whether

they were still living, or that residents of that county should have been able to have given him any satisfactory information on the subject. And what that information was he does not state, though he calls it proof of their death. In the next place it is strange he should have given these affidavits, he had taken so much pains to get, to the counsel on the opposite side. And if they were satisfied, that they proved the death of the plaintiffs, it is strange they had not suggested it years before. And again, if Bailey and his counsel were so anxious to have the proper parties before the court, and the plaintiffs' counsel would not suggest their death, it is strange Bailey's counsel did not do it long before. I think the court, if the plaintiffs' counsel were willing to risk taking a decree in the name of Gillespie and wife, did not err in disregarding such suggestion. Section 44 of chapter 130 of the Code p. 624, has no bearing on this case; it applies not to persons, who have formerly resided in this State, and who have removed permanently from the State to reside elsewhere; but only to persons who have resided in this State, and have left it with the intention of returning, but who have not returned to it for seven years successively; such persons are presumed to be dead. But in this case the plantiffs were non-residents of the State, and had been for more than thirty years, and as such, security for costs had been in this cause required of them by the defendants, and it had been given. Another objection has been urged to the consideration of this cause on its merits. It is insisted that no decree should have been rendered in it, because the cause has been more than once discontinued by the failure of the complainants to prosecute it for long periods; and the case of the *Exchange Bank of Virginia* v. *Hall et al.*, 6 W. Va. 447, is relied upon as authority by the appellants for this position. That case was an action of debt against Porters and others instituted in 1856. The writ was served on Harris and at February term 1857 a judgment was taken against him. The rule book shows that at

January rules 1857 an *alias* summons issued against the other defendants which was lost; but which it is presumed was not served, as no common order was taken against them; eleven years after this rendition of judgments against Harris an *alias* summons is issued against the other defendants, and one of them, Hall, moved the court to dismiss the proceedings against him, as no steps had been taken to have him summoned for eleven years, which was done by the court below and approved by this Court; no entry even of a continuance of this cause either at rules or in court was entered during these eleven years; and it seems as the statute authorized a plaintiff, if he chose, to take a judgment against the defendant on whom a summons is issued, and discontinue his suit as to the other defendants on whom process is not served, that it was obviously proper to consider in such a case, that the plaintiff had exercised this option. But the case before us is far different. In this cause the bill was filed at June rules 1853, at April court 1854 the defendant, Bailey, filed his answer and the cause was remanded to rules. At June rules 1834 a general replication was filed to this answer. At January rules 1835 the defendants entered a rule for security for costs. At February rules 1835, the security for costs was given. Regular continuance of this cause was entered at every rule day, while the cause was at rules, until July rules 1836, when the cause was set for hearing as to defendant Bailey, and at August rules 1836 as to all the other defendants. At September court 1836 the cause was continued till the next term; and similar continuances of the cause were entered at each succeeding term, till February term 1847, when a decree, settling the principles of the cause, was entered, sundry depositions having been taken by the parties in the mean time, and since then regular continuances have been entered in the cause at every term, except when decrees have been entered. A discontinuance is the interruption of the proceedings, occasioned by the failure

of the plaintiff to continue the suit regularly from time to time, as he ought.    3 Black. Com. 296; Bouvier's Law Dictionary, title, "Discontinuance."   It is obvious that there has been no discontinuance proper in this cause, as continuances, both at rules and in court, have always been regularly entered.   The Virginia statute law provided a mode by which a defendant could have a cause, which was thus continued on the docket for years, discontinued.   After it had thus been continued for seven years, the court would, on the defendant's motion, have it struck from the docket, which then operated as a discontinuance of the cause; and unless a motion to reinstate it was made within one year, such cause could never thereafter be reinstated.  Acts of 1825-6, p. 17, Code of Virginia of 1860, chapter 173, section 8, 718.   This act has been re-enacted in this State, except that the time which must elapse before the defendant can by such steps have a cause discontinued, is reduced to four years.   No such steps having been taken in this cause, there has been no discontinuance thereof and the court below properly rendered a decree on the merits of the cause.

But a still further reason is urged why this cause should have been dismissed without its merits being considered. Bailey in his answer alleges, that he is informed and believes that the complainants a few days before the commencement of this suit, by a deed, while he was in the adversary possession of the land, conveyed it to John J. Jackson, their attorney, for $300.00, of which $200.00 was to be paid on a contingency; and that John J. Jackson was prosecuting this suit at his own costs and for his own benefit in the name of the complainants; and the complainants having no interest in said land, when this suit was brought, and said Jackson being guilty of maintenance and champerty, the suit ought to be dismissed. This answer was replied to generally; and this being affirmative matter, ought to have been proven, to have the effect claimed.   It is proven in the cause, that John J. Jackson did

purchase the interest of the complainants in the said land, and took from them a deed ; but the evidence fails to show whether this purchase and the making of this deed was before or since the institution of this suit. The only proof of the date of the execution of this deed is the deposition of the two magistrates, before whom it was acknowledged. One of them states it was in the summer of 1833, but he cannot state in what month; the other says that it was about a year and a half before he gave his deposition, which was August 19, 1834. Another witness proves that Jackson, in June 1833, spoke of having an interest in the land; and another, that at the time the subpœna in this cause was served, Gillespie and wife were in Wood county, and that they had not been there since that trip. The bill was filed on the first Monday in June 1833, it does not appear how long before the subpœna was served or issued. The burden of proof being on the defendant Bailey, to show that the deed was made before the service of the summons in this action, he has failed to meet this burden ; for this evidence fails to prove that this deed was made before the institution of this suit. The date given by one of the magistrates would be before, but that given by the other would be since. If the deed was executed since the institution of the suit, it would have no effect upon it, as Jackson would then be a *lis pendens* purchaser ; and the suit ought to be then prosecuted precisely as if he had not purchased. There is no evidence to show by whom the costs of this suit were borne. We need not therefore, enquire into the correctness of the legal positions taken on this point in Bailey's answer, as they do not arise, the facts necessary to raise such a question not being proven.

Having disposed of all the preliminary questions, I will now consider the case on its merits. The complainants, John Gillespie and Esther Gillespie, for the sum of $80.00, on July 8, 1803, by a deed or contract under seal of that date, sold their interest in the real and personal estate of the father of the female complainant,

to her brother, John James, who on July 31, 1832, by an agreement, sold the interest thereby acquired in the tract of land of seven hundred acres in Wood county, that is, an undivided seventh part thereof, to the defendant, Bailey. When this agreement was signed, on July 8, 1803, by the complainants, John Gillespie and Esther Gillespie, she was not quite eighteen years of age, and she was a married woman. There was no privy examination of her as required by law, and in fact no acknowledgment of this deed or agreement, either by him or by her; it was simply signed in the presence of three

Syllabus 1.

witnesses, who attested it. This deed was obviously null and void, so far as Esther Gillespie was concerned. It was not merely voidable by her, but absolutely void. As a married woman, she had no power to sell or convey land, or make any contract of any sort in reference thereto. The statute authorized her by uniting in a deed with her husband to convey her interest in land, provided she was privily examined and acknowledged the deed in the manner prescribed by the statute; but if these statutory provisions were not strictly complied with her deed is an absolute nullity; this is so obvious that no authorties need be cited. This deed or contract of 1803 operated then only to convey the life estate of John Gillespie in the one-seventh part of said land. He had just married, and by virtue of his marriage he had a life estate in this undivided seventh-part of this tract of land owned by his wife, which life estate lasted only during the joint lives of himself and his wife; while then this deed operated to convey this interest, yet he

Syllabus 2.

being, when he executed this deed, an infant but eighteen years of age, he could avoid this deed or contract at his pleasure on his attaining the age of twenty-one years, or he could then, if he chose, confirm it. There is but one single contract, which all the authorities agree, is absolutely binding on an infant, and that is an *implied* contract for necessaries furnished him ; and on the the other hand there is but one single act of an infant, which all

the authorities agree, is absolutely void, that is the giving of a power of attorney; with these exceptions all other contracts of an infant whether executory or executed are voidable at the option of the infant, after he attains the age of twenty-one years; there are no other exceptions to this rule, which are admitted by all the authorities; though there are some authorities which lay down some other exceptions. See 1 American Leading Cases note to *Tucker et al* v. *Moreland* and *Vasse* v. *Smith*, 301, 304 and 306. There can be no question but that the contract or deed of July 8, 1803, the subject of controversy in this case so far as it was a contract of John Gillespie, was on the one hand not absolutely binding, and on the other not absolutely void, but was at his option, after he attained the age of twenty-one, voidable by him or confirmable by him; that is it was at his option, after he attained the age of twenty-one, void or valid as he might elect. . It is equally clear, that if he once confirmed it after he attained his full age, he could never afterwards elect to hold it void, and that without any affirmance it would remain valid till he elected to hold it void. These positions I do not understand to be controverted by the counsel on either side in this cause.

It is clear too, that the institution of this suit, in which the complainants ask the court to declare this deed or contract void, is an avoidance of it, if when the suit was instituted, John Gillespie had a right to avoid this contract, which he certainly had, though twenty-seven years had elapsed since he attained his full age, unless he had by some positive act affirmed this contract since he attained his majority, or unless the mere lapse of time and surrounding circumstances amounted. in itself by operation of law to an affirmance of the contract. The real question in controversy is, whether the failure of John Gillespie for a period of twenty-seven years, after he attained his full age, to do any act disaffirming this contract, or indicating that he was dissatisfied with it, under the circumstances,

1877.
Special Term.

Gillespie *et ux.*
v.
Bailey *et al.*

which surrounded the case, would in law amount to an affirmance of this contract or deed. There is an obvious distinction in this respect between the case where an infant has purchased land and retained the possession after attaining his full age, and the case, where he has sold land and had after his majority permitted a considerable time to elapse without disaffirming the sale. There are decisions or *dicta* to the effect that the infant must in case of a sale declare his disaffirmance in a reasonable time. See *Klein* v. *Bebee,* 6 Con. 494 ; *Holmes* v. *Blogg,* 8 Taunton 35 ; *Richardson* v. *Bright,* 9 Ver. 368. But these *dicta* or decisions are contrary to reason and the great weight of authority. The true doctrine is that mere acquiescence where an infant has sold land, though extended to an unreasonable length of time, will not amount to an affirmance: *New Hampshire M. F. I. Co.* v. *Noyes,* 32 N. H. 351 ; *Irvine* v. *Irvine,* 9 Wallace, 626 ; *Voorhees* v. *Voorhees,* 24 Barbour 153 ; *Tucker* v. *Mooreland,* 10 Peters 59, and notes thereto ; 1 Am. Leading Laws, 316 ; *Drake* v. *Ramsay,* 5 Ohio 251 ; *Gressinger* v. *Welch,* 15 Ohio 156 ; *Boorly* v. *McKinney,* 28 Me. 517.

But though mere acquiescence for an unreasonable time will not, where an infant has sold land, amount in law to an affirmance of the sale, yet it will amount to such affirmance under certain circumstances—as when the infant has for several years, without any objection to the sale, stood by and seen the purchaser making large expenditures upon the land bought, in valuable improvements : See *Wharton* v. *East,* 5 Yerger 41 ; *Wallace's Super.* v. *Lewis,* 4 Harrington 75. So too, though the purchaser has not put valuable improvements on the land bought, still if he has been in actual possession of it for a period (since the infant attained his majority) sufficient to bar its recovery by another, if this possession had been adversary, such acquiescence under these circumstances, would legally amount to an affirmance of the sale: See *Drake* v. *Ramsay* ; *Gressinger* v. *Lessee of Welch* ; *Voorhees* v. *Voorhees &c.; Tucker et al.* v. *Mooreland,*

*supra.* Although these decisions are not explicit on the point, yet it seems to me clear, that to make this silent acquiescence alone an affirmance of the sale, provided it has continued for a longer time than would bar the recovery of land, this acquiescence must be under the same or like circumstances : that is, the purchaser must, during this whole period, be in the possession of the land; and if he is not in possession, but the land is wild land and unoccupied, that the mere lapse of time, though it exceeded the bar of the statute of limitations for the recovery of land, would not amount to an affirmation of the sale. It is not the mere lapse of time before the party exercised his option to avoid the sale made in his infancy that amounts to an affirmance, but it is the length of such acquiescence accompanied by the possession of the land in the mean time by the purchaser. I do not mean to say that mere lapse of time, though the purchaser was not in continuous possession, might not, when extended far beyond the time in which lands can be recovered, when in adversary possession, might not under some circumstances amount to a confirmation, but simply that such acquiescence for a short time beyond this period, when there was no possession held by the purchaser, cannot be held to be an affirmation of the sale. In the present case there is no evidence in the case showing that the purchaser or his assignee took any possession of this land, or occupied it in any manner till within a year or two preceeding this sale. And if my views above expressed are correct, this alone will prevent this lapse of twenty-seven years after Gillespie attained his majority, before instituting this suit from being considered an affirmance of this sale ; but it is further strengthened by the fact that not only he, but also the purchaser from him, were non-residents of the State, and almost immediately after the purchaser sold this land to a resident of the State, and he took possession of it, this suit was brought. The delay too in the institution of this suit

1877.
Special Term.
Gillespie *et ux.*
v.
Bailey *et al.*

is further reasonably accounted for by the circumstances referred to in the decree of the court below of 1847, especially the fact that the litigation had been pending in the courts for many years in reference to the rights of James's heirs in this cause, which would naturally have delayed the institution of a suit for a partition of the land till the rights of James's heirs in it were determined. This controversy was still pending when this suit was instituted ; and it would not probably have been instituted as soon as it was had not Bailey taken possession of the land. The court below did not err in holding therefore, that Gillespie had not affirmed this sale made in his infancy, and therefore had a right by the institution of this suit to avoid said sale.

Syllabus 4.

The next enquiry is : what should the court require of a person who asks the court to set aside a contract for the sale of land or the actual sale of land made by him when an infant, because being now an adult he elects to avoid such contract or sale. It is clear that if he has the consideration in kind which he received for such land, he must return it to the purchasers when he elects to set aside his contract of sale, or the sale ; and in such case it is immaterial whether the contract be executory, or executed ; whether he made a deed for the land or not. He must in every case when he avoids a contract executory, or executed, made during his infancy, return any property which he has received as the consideration of the contract, and which he still has in his possession. But if during his infancy he has wasted, sold or otherwise ceased to possess the property which is the consideration of his contract, so that he cannot return it, or cannot return, except in its deteriorated condition, such inability will not hinder him from avoiding his contract generally.   See *Mustard* v. *Wohlford*, 15 Gratt. 343 ; *Bedinger* v. *Wharton*, 27 Gratt. 857 ; *Boody* v. *McKinney*, 23 Me. 517 ; *Price* v. *Ferman*, 27 Vt. 271 ; *Robbin* v. *Eaton*, 10 N. H. 562 ; *Fitz* v. *Hall*, 9 N. H. 441.

A distinction has, as we shall presently see, been taken

in some cases between an executory and an executed contract, and it may be regarded as questionable, whether, the rule above laid down is applicable to executed contracts, though its application to executory contracts seems to be well settled. In the language of Judge Môncure in *Mustard* v. *Wohlford,* 15 Gratt. 343 : " If the infant has delivered possession of land contracted to be sold by him, he has an unconditional right to recover it back in an action at law ; and a court of equity will not restrain him from doing so, nor impose terms on the exercise of his right :" See *Brunner et ux* v. *Franklin,* &c., 4 Gill 463. Judge Dorsey in delivering the opinion of the court in that case, uses this language : " Establish the contrary doctrine and what is the result? Why the whole policy of the law as to infantile incompetency to sell, waste and dispose of their propperty and estate is frustrated ; the alleged guardianship and protection thrown around them is a mere mockery, existing only in name. An infant may sell his patrimonial estate, prodigally waste the purchase money in extravagance, gambling and dissipation ; and if when arrived at maturity and discretion, he disaffirm the contract, and sue at law for the recovery of the property, a court of equity will, by injunction, arrest the arm of the law and say to him : before you shall further assert your claim to your estate, you must repay to the purchaser all the money you have received from him. To such a repudiation of all material discrimination between the contracts of infants and adults this court is not prepared to subscribe." The case before the court in which these strong views were expressed was, it is true, an executory contract. But it seems to me, they apply with almost equal force to an executed contract. It seems to make but little substantial difference whether the infant who has sold his patrimonial estate and been paid for it in full and has during his infancy wasted the purchase money in extravagence and gambling, has executed a deed to the purchaser at the time of

*1877.*
Special Term.

Gillespie *et ux.*
v.
Bailey *et al.*

the sale, or only signed a contract to convey the land. In either case the policy of the law in declaring an infant incompetent to make a contract which shall be binding on him, if he choose to avoid it when he reaches his majority, seems to be to a very great extent frustrated, if he could only set aside the contract of sale or the sale itself on refunding the purchase money. Still a distinction has been taken between the two cases by highly respectable authority, which I am unwilling to disregard without the most mature consideration; and as in this case it is unnecessary to decide this question, I do not now propose to express any opinion upon it; but will refer to some of the cases, in which such a distinction was taken. In *Smith* v. *Evans*, 5 Humph. 70, it was held in the case of an *executed* sale by an infant, if he disaffirms and seeks to recover back the article sold, he must return the purchase money or other consideration. So also in *Badger* v. *Phinney* 15 Mass., 359 and in *Hillyer* v. *Bennett* 3 Edw. Ch. 222 it was further held, that if he goes in to a chancery court to set aside a conveyance, because executed while he was an infant, he must offer to restore the purchase money. The Court of Appeals of Virginia in the case of *Mustard* v. *Wohlford* declined to express any opinion, as to the correctness of the decission in these cases, or any opinion upon the distinction drawn in them, between executed and executory contracts and in that case only decided, that if the contract for sale of land is executory, the infant is not bound, when he disaffirms such contract, to refund the purchase money received by him when an infant. In the case of *Bedinger* v. *Warton* 27 Gratt 857 the court reaffirms the principles laid down in *Mustard* v. *Wohlford*; they say in this case: "that where a contract is *executory* merely, it is very clear that it can be avoided by an infant after attaining lawful age without restoring anything, which may have been received by him in consideration of the contract and may have been consumed by him during infancy, or not remain in his hands on his arrival at law-

ful age ; but whether or not the same principal applies to the case of an executed contract, has never yet been decided by this Court" and they decline again to express any opinion on this point through an examination of the case will show that the contract in this case was an executed contract being a deed duly delivered and the land sold, put in the posession of the purchasers, and all the purchase money paid. In that case the party, who sought to set aside a sale of land made when she was an infant, had sold the land while she was an infant for $56,860, which was all paid by the purchaser in cash in confederate money and a deed executed to him, and he put in posession ; but the court being satisfied that this purchase money had been expended by the infant before attaining her majority, decreed a rescision or avoidance of the deed not only without requiring any portion of the purchase money which had been paid by the purchaser to be refunded to him, but declined even to say that he was not responsible for rents from the time of the purchase and even before the institution of the suit. There is full as good reason to infer that the $80.00 received by John Gillespie, when he was eighteen years of age, had been expended before he attained the age of twenty-one as there was to assume the expenditure of the entire purchase money, in the case of *Bedinger* v. *Wharton* during the infancy of the vendor. I do not however mean to determine whether the defendant Bailey, when this contract or deed of Gillespie, was avoided, was or was not entitled to have such portion of this $80.00, as was paid as the consideration for the interest of Gillespie in said tract of land refunded, for it is obvious that if this was done, he was bound to account for the rents and profits of this land, and the court so decreed in 1847. It may be that at that time Bailey, the appellant had an interest in having this account taken ; but be this as it may, he did not press the taking of the account and noting was done in carrying out the order of the court, that such account be taken, for more than

twenty-two years, when the court rendered a final decree on October 5, 1869, assigning to the complainants the one-seventh part of said tract of land as it had been laid off by metes and bounds by the commissioners, who had been appointed for the purpose, and directing the costs of the suit to be equally divided between the parties. The court in this final decree entirely ignored so much of the decree of February 17, 1847, as ordered the master commissioner to ascertain "what portion of the $80.00, the consideration mentioned in the release of July 8, 1803, was paid on account of the land in the bill mentioned, and also an account charging John James, or his vendee, Bailey, with the rents and profits of the land in the bill mentioned, and crediting them with said money paid on account thereof and interest." We have no means of knowing what was the value of the rent of the land so to be charged Bailey ; but it does appear that sixteen acres of the land assigned the complainants as a portion of their interest, was good tillable land on the Kanawha river, as good as the Kanawha bottoms generally, and worth about $50.00 per acre, the rent of this piece of land alone since the rendition of the decree in 1847 would obviously exceed greatly he whole purchase money paid to the complainants, $8000, and the interest; as they did not insist on the settling of the account in the court below, and have not complained of the final decree being rendered without first settling this account, I do not think the appellant Bailey can assign this as error in this Court. It may have been an error to decide this cause finally without this account being settled ; and the court below may have erred in disregarding this provision of the decree of 1847, it never having been reheard or set aside ; but it is obviously an omisssion or error by the court, which was in no manner prejudicial to the appellant, as it is obvious that had this account been settled, he would have been doubtless brought in debt to the complainants in considerable amount. He cannot therefore ask the reversal of this

decree of October 5, 1869, on that account; and it is therefore unnecessary to determine whether the decree of 1847, directing this account, was or was not erroneous, the complainants in the court below not asking this settlement. It was urged that before the institution of this suit for a partition of this land, the complainants ought to have first established their right to the one-seventh part thereof by a separate suit. That there is no necessity for the institution of such separate suit as preliminary to the institution of a suit for partition, but that both may properly be united in one suit, has been decided by this Court in the case of *Arnold* v. *Arnold*, 11 W. Va. 449. The partition of the land is also objected to as unequal and unjust; but the evidence shows that it was fair and equitable. The decree of October 5, 1869, must therefore be affirmed, and the appellees John Gillespie and Esther, his wife, must recover of the appellant their costs about this suit in this Court expended and $30.00 damages.

JUDGES HAYMOND, MOORE and JOHNSON concurred.

DECREE AFFIRMED.